UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| E.F.L., | ) |
|     Petitioner, | ) Case No. 20-cv-00072 |
| v. | ) Hon. Steven C. Seeger |
| BILL PRIM, McHenry County Sheriff; CHAD WOLF, Acting Secretary, Department of Homeland Security; KENNETH T. CUCCINELLI, Acting Director, U.S. Citizenship and Immigration Services; ROBERT GUADIAN, Chicago Field Office Director, Immigration and Customs Enforcement, | ) |
|     Respondents. | ) |

## **MEMORANDUM OPINION AND ORDER**

Petitioner E.F.L. is a foreign national who is detained by the U.S. Immigration and Customs Enforcement and is facing imminent removal. She filed a petition for a writ of habeas corpus, as well as an emergency motion for a temporary restraining order and preliminary injunction, seeking to bar her upcoming deportation. The petition and the motion are denied for lack of subject matter jurisdiction.

**Background**

E.F.L. is a 38-year-old Mexican national and citizen who has lived in the United States since 2001.[1] *See* Petition at ¶ 18 (Dckt. No. 2). She is the mother of five children, including two lawful permanent residents and three U.S. citizens. *Id.* at ¶ 4.

---

[1] This Court granted a motion by E.F.L. to use only her initials in light of the allegations of domestic abuse by her husband. *See* Dckt. Nos. 5, 7.

The petition recounts years of suffering that she endured during her childhood in Mexico, including physical, verbal, and sexual abuse. *Id.* at ¶ 25; *see generally id.* at ¶¶ 24-32. She was raped when she was 12 years old, and then attempted suicide. *Id.* at ¶¶ 25, 26. She suffered from mental health issues and was diagnosed with depression, anxiety, and bi-polar disorder. *Id.* at ¶ 26. She had her first child in 1995, when she was only 14 years old. *Id.* at ¶ 28.

In 1999, E.F.L. met M.F., the man who eventually became her husband. *Id.* at ¶ 32. M.F., a lawful permanent resident living in Los Angeles, arranged for her to come to the United States in May 2001. *Id.* at ¶¶ 32-33. She returned to Mexico one month later and married M.F. *Id.* at ¶ 33.

On July 12, 2001, E.F.L. attempted to reenter the United States by using someone else's birth certificate. *Id.* at ¶ 34. She was unsuccessful. She eventually confessed to the border patrol agent that the birth certificate did not belong to her. *Id.* Immigration officials sent her back to Mexico and issued her a Notice and Order of Expedited Removal under 8 U.S.C. § 1225(b)(1). *Id.*; *see also* Declaration of Deportation Officer Daniel Zavala ("Zavala Decl.") at ¶ 8 (Dckt. No. 17-1). Immigration officials warned her against re-entry by serving her with a Form-196, which E.F.L. signed. *See* Zavala Decl. at ¶ 9. During the process, E.F.L. gave the immigration officials a false name. *See* Petition at ¶ 34.

She didn't stay in Mexico long. After a few days, E.F.L. entered the United States under false pretenses, using someone else's permanent resident card. *Id.* She settled in Los Angeles with her new husband. *Id.*

After entering the United States, E.F.L. endured decades of spousal abuse. *Id.* at ¶¶ 35-50. Her husband's controlling behavior degenerated into "clear and unequivocal physical, sexual, mental, and emotional violence and abuse." *Id.* at ¶ 53. She endured "serial rape," which

2

took place "almost every day." *Id.* at ¶ 42. A psychiatrist, like the doctors in Mexico, diagnosed her with anxiety, depression, and bipolar disorder. *Id.* at ¶ 37. She attempted suicide once again. *Id.* at ¶ 38.

The family later moved to Kentucky, where she received a variety of medications for her ongoing mental health issues. *Id.* at ¶¶ 43-50. The treatment was not successful, and she continued to suffer from depression and anxiety. *Id.* She attempted to take her own life by swallowing all of her prescription pills. *Id.* at ¶ 47.

On March 3, 2018, E.F.L. was arrested for driving while intoxicated. *Id.* at ¶ 51. She was transferred to ICE custody the next day, and she has remained in detention ever since. *Id.* The next day, the Department of Homeland Security reinstated her expedited removal order from 2001. *Id.*; *see also* Zavala Decl. at ¶ 12 (Dckt. No. 17-1).

Shortly before her scheduled removal, E.F.L. expressed a fear of returning to Mexico, which halted her deportation. *See* Zavala Decl. at ¶¶ 15-18. On June 5, 2018, E.F.L. filed an application for withholding of removal and relief under the Convention Against Torture (Form I-589) with the Immigration Court in Chicago. *See* Petition at ¶ 58; Dckt. No. 21-1. She argued that she had a well-founded fear of returning to Mexico, given her past history. *See* Petition at ¶ 58. After conducting a full hearing, the Immigration Judge denied her application. *Id.*; Dckt. No. 15-3, at 10-15 of 15.

The Immigration Judge noted "serious problems with Applicant's credibility," but ultimately found her "generally credible." *See* Dckt. No. 15-3, at 13 of 15. The Court nonetheless denied her application for withholding of removal because the government had demonstrated that relocation would be reasonable. The Court found that "even assuming Applicant was persecuted in Mexico on account of a protected ground, she is not able to show

3

that she is entitled to withholding of removal in Mexico because the government has shown that she could relocate to avoid harm." *Id.* at 13 of 15. The Court also denied her claim for protection under the Convention Against Torture because there was no evidence that the Mexican government had tortured her in the past or would torture her in the future. *Id.* at 14.

E.F.L. appealed the decision on her application for withholding of removal (but not the ruling on the Convention Against Torture) to the Board of Immigration Appeals. *See* Petition at ¶ 59; Dckt. No. 15-3, at 7-9 of 15. But the Board dismissed her appeal after finding no clear error and adopting the Immigration Judge's decision. *See* Dckt. No. 15-3, at 9 of 15. E.F.L. retained new counsel and filed a motion to reopen based on ineffective assistance of counsel, but the Board denied that motion, too. *See* Petition at ¶ 60; Dckt. No. 15-3, at 2-6 of 15.

E.F.L. requested and received judicial review. She filed two petitions for review with the Seventh Circuit, challenging the Board's denial of her application for withholding of removal, as well as the Board's denial of her motion to reopen. The Seventh Circuit denied both petitions on December 30, 2019. *See* Nos. 19-1453 & 19-2312. The Seventh Circuit found that there was substantial evidence supporting the Board's decision that E.F.L. could relocate within Mexico. The Court of Appeals also found that the Board did not abuse its discretion in denying the motion about ineffective assistance of counsel.

Meanwhile, E.F.L. pursued another form of relief. On August 8, 2019, E.F.L. filed a self-petition under the Violence Against Women Act (Form I-360) with the United States Citizenship and Immigration Services ("USCIS"). *See* Dckt. No. 15-1, at 6-160 of 160; Declaration of Tracy L. Zeppi ("Zeppi Decl.") at ¶ 9 (Dckt. No. 17-2). Petitioner's Form I-360 sought relief under 8 U.S.C. § 1154(a)(1)(A)(iii) based on the years of abuse she suffered from her husband, a U.S. citizen. *See* Petition at ¶ 9; *see also* 8 U.S.C. § 1145(a)(1)(A)(iii).

4

That classification would render Petitioner eligible for work authorization. *See* 8 U.S.C. § 1154(a)(1)(K). She could also seek deferred action, too. But deferred action is not guaranteed: the USCIS is authorized to confer deferred action on a case-by-case basis. *See* Zeppi Decl. at ¶ 4 (citing Immigration and Naturalization Service, Office of Programs, *Supplemental Guidance on Battered Alien Self-Petitioning Process and Related Issues*, Memorandum (May 6, 1997)). The USCIS website includes the following explanation: "If your Form I-360 Petition for Amerasian, Widow(er), or Special Immigrant is approved and you do not have legal immigration status in the United States, we ***may*** place you in deferred action, which allows you to remain in the United States." USCIS, *Battered Spouse, Children, and Parents: Filing Process*, https://www.uscis.gov/humanitarian/battered-spouse-children-and-parents (last updated Feb. 16, 2016) (emphasis added). Under current policy, the USCIS does not grant deferred action to "aliens with approved VAWA self-petitions if they are in removal proceedings, outside the United States, or have already adjusted status to lawful permanent resident." *See* Zeppi Decl. at ¶¶ 6, 16. So, as the government sees it, the pending VAWA petition will make no difference. *Id.*

On November 25, 2019, the USCIS determined that E.F.L. had established a prima facie case for classification under the self-petitioning provisions of the Violence Against Women Act. *See* Dckt. No. 15-1, at 4 of 160. The notice stated that it "may be used to assist you in receiving public benefits." *Id.* But the USCIS's notice included a few caveats. The prima facie determination expires on November 24, 2020. *Id.* Also, establishing a prima facie case does not necessarily mean that USCIS would approve the petition. *Id.*

On January 3, 2020, less than one week after the Seventh Circuit denied the petitions for review, E.F.L. filed a petition for a writ of habeas corpus in this Court about the "prospect of imminent removal." *See* Dckt. No. 2 at 1. The petition advanced two counts. Count I alleged

5

that the upcoming removal violates the Administrative Procedure Act, 5 U.S.C. § 706(2). *See* Petition at ¶¶ 75-85. Among other things, E.F.L. claimed that removal would constitute an abuse of discretion under the APA because removal would render her ineligible for benefits as a VAWA self-petitioner. *Id.* at ¶ 79. Count II alleged that removal would violate the Due Process Clause of the Constitution. *Id.* at ¶¶ 86-92.

The Court presided over an initial status hearing on January 15, 2020, and set a briefing schedule on the petition and the emergency motion. The Court also instructed the government to "notify the Court forty-eight (48) hours in advance if Immigration and Customs Enforcement (ICE) decides to deport the Plaintiff in the short-term." *See* 1/15/20 Order (Dckt. No. 11). Two days later, the United States notified the Court that ICE plans to effectuate petitioner's removal on February 7, 2020. *See* Dckt. No. 12.

That day, this Court set a hearing for February 4, and then (at petitioner's request) reset it for February 5. *See* Dckt. Nos. 13, 18. This Court presided over oral argument on the petition and the motion on February 5, 2020, a few days after the completion of the briefing. *See* Dckt. No. 18.

Meanwhile, E.F.L.'s VAWA self-petition remains pending. On January 27, 2020, USCIS sent a notice and requested additional evidence so that it could process E.F.L.'s claim. *See* Dckt. No. 19-7, at 2 of 4.

**Analysis**

The first question in every case is whether the Court has the power to hear the case at all. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted).

Congress has the power to draw the boundaries of the jurisdiction of the lower federal courts. *See* U.S. Const. art. III, § 1; *Patchak v. Zinke*, 138 S.Ct. 897, 906 (2018). Congress's power over federal jurisdiction is "an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Congress vested the Courts of Appeals with the power to review an order to remove an alien from the United States. A person can challenge a removal order by filing a petition for review with the Court of Appeals. *See* 8 U.S.C. § 1252(a)(1). A petition for review is not simply *a* way – it is the *only* way to obtain judicial review of an order of removal, apart from a few exceptions. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e)."); *see also Kightlinger v. Napolitano*, 500 Fed. Appx. 511, 513-14 (7th Cir. 2013); *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006) ("Congress clearly intended the courts of appeals to be the one judicial forum for hearing challenges to administrative removal orders."). Based on the plain text of the statute, the Court of Appeals is the "sole and exclusive" judicial forum to challenge an order of removal. *See* 8 U.S.C. § 1252(a)(5).

At the same time, Congress divested lower courts of the power to hear challenges to the decision to *execute* an order of removal. The statute provides that "no court" shall have jurisdiction over "any cause or claim" about certain decisions by the Attorney General, including a decision to execute a removal order:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).[2]

Taken together, the statutory language makes clear which courts can, and which courts cannot, hear a challenge to an order of removal. *See Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 736-38 (7th Cir. 2012). Based on the plain text of the statute, the Court of Appeals is the "sole and exclusive" judicial forum to challenge an order of removal. *See* 8 U.S.C. § 1252(a)(5). But "no court" can hear a challenge to a decision or action by the Executive Branch to "*execute* removal orders." *See* 8 U.S.C. § 1252(g) (emphasis added).

The Supreme Court adopted a "narrow reading" of § 1252(g) in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 487 (1999) ("*AAADC*"). The Supreme Court held that the provision does not "cover[] the universe of deportation claims," but rather is "much narrower." *AAADC*, 525 U.S. at 482. The "much narrower" reading meant what the text itself says. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis in original). So the "three discrete events along the road to deportation" are not a "shorthand way of referring to all claims arising from deportation proceedings." *Id.*

"*American-Arab Anti-Discrimination Committee* held that the three categories of actions mentioned in the statute – decisions to 'commence proceedings, adjudicate cases, or execute

---

[2] In the Homeland Security Act of 2002, Congress transferred to the Department of Homeland Security all functions previously performed by the Immigration and Naturalization Service. As a result, statutory references to the Attorney General now apply to the Department of Homeland Security. *See Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 499 n.1 (7th Cir. 1999); *Albarran v. Wong*, 157 F. Supp. 3d 779, 785-86 (7th Cir. 2016); *Buddhi v. Holder*, 344 Fed. Appx. 280, 284 n.1 (7th Cir. 2009).

removal orders' – must not be expanded by the judiciary, but that within its scope the statute is conclusive." *Sharif ex. rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002). So section 1252(g) is not all-encompassing, but when it applies, it blocks judicial review.

E.F.L. has already availed herself of the one and only avenue for challenging her removal order. She had a full hearing before the Immigration Court, and then obtained two rulings from the Board. She then exercised her statutory right to seek review by the Seventh Circuit. In short, she has exhausted the opportunities that Congress gave her to challenge her removal order.

Petitioner concedes, as she must, that she cannot challenge the validity of the removal order itself. *See* Reply Brf. at 3, 5 (Dckt. No. 19). She also acknowledges that this Court cannot hear a challenge to a discretionary decision by the Executive Branch to execute an order of removal. *Id.* Even so, she contends that this Court can enjoin a pending removal because she has a right to a ruling on her self-petition before she can be deported.

The petition squarely challenges the decision by the Executive Branch to remove her from the United States. The very first paragraph takes aim at the upcoming deportation: "Petitioner is in immigration detention and faces the prospect of imminent removal." *See* Petition at 1. Count I alleges that her "removal under the facts alleged here is a violation of the APA," and Count II alleges that the Due Process Clause "prevent[s] her removal." *Id.* at ¶¶ 78, 89. The primary request for relief is "injunctive relief enjoining Defendants-Respondents from removing Petitioner from the U.S. while her VAWA self-petition remains pending with USCIS." *Id.* at 26-27. And references to her imminent removal appear liberally throughout the petition. *See, e.g., id.* at ¶ 3 ("Petitioner's imminent removal from the U.S. violates, and would violate, the Immigration and Nationality Act ('INA') and its regulations, the Administrative Procedures [sic] Act ('APA'), and the U.S. Constitution's Due Process guarantee and the Department of

9

Homeland Security's own administrative guidance, unless the Court grants relief."); *id.* at ¶ 11 ("Pursuant to this Court's inherent powers in habeas corpus proceedings, Petitioner respectfully requests that this Court stay her removal from the United States pending resolution of her VAWA self-petition.").

The petition thus falls squarely within the statutory prohibition of § 1252(g). The petition challenges an upcoming deportation under an order of removal. But lower courts have no power to hear a claim about a decision or action to "execute removal orders," and thus this Court has no jurisdiction. *See* 8 U.S.C. § 1252(g).

The Executive Branch made the decision to press forward with removal, even though USCIS has not resolved her VAWA self-petition. Under the statute, this Court has no power to hear a challenge to that discretionary decision, meaning the decision to deport her before resolving her application. *See Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002); *see also Chapinski v. Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002) ("If judicial review of a decision to commence proceedings is barred, it follows that section 1252(g) also precludes judicial review of the Attorney General's decision *not* to commence removal proceedings."). "An alien attempting to achieve judicial review of such discretionary measures may not avoid the § 1252(g) bar by the simple expedient of recharacterizing a claim as one challenging a refusal to act." *Gomez-Chavez*, 308 F.3d at 800.

The Seventh Circuit addressed a comparable challenge in *Sharif ex. rel. Sharif v. Ashcroft*, 280 F.3d 786 (7th Cir. 2002). There, foreign nationals asked the district court to stay removal while they sought relief from the agency, through either additional administrative review or an application for relief under the Legal Immigration Family Equity Act, Pub. L. No. 06-553, 114 Stat. 2762 (2000). But as the Court of Appeals recognized, the statute "names three

administrative actions – decisions to 'commence proceedings, adjudicate cases, or execute removal orders,' – and interdicts all judicial review 'arising from' those actions, unless some other part of § 1252 allows review." *Id.* The Seventh Circuit ruled that a "request for a stay of removal 'arises from' the Attorney General's decision (reflected by the bag-and-baggage letter) to execute a removal order," and thus § 1252(g) blocked the claim. *Sharif*, 280 F.3d at 787. "[A] district court lacks jurisdiction to compel the Attorney General to initiate or resolve proceedings that would lead to relief from removal." *Id.* at 787-88.

The Seventh Circuit reached the same result in *Gomez-Chavez v. Perryman*, 308 F.3d 796 (7th Cir. 2002). The alien challenged the deportation proceedings in district court, arguing that the INS had not yet adjudicated his I-212 application for permission to reapply for admission. *See Gomez-Chavez*, 308 F.3d at 799. The Seventh Circuit ruled that § 1252(g) deprived the district court of jurisdiction. The ban on judicial review applied to the agency's decision not to act on the application, even though it could have impacted removal. "These strict limitations apply not only to the Attorney General's positive actions, but also to his refusals to take action." *Id.* at 800. The decision not to act on a pending application, and the decision to deport him anyway, were non-reviewable discretionary acts.

As the Court of Appeals explained, the foreign national's "primary claim is that the INS is now improperly refusing to adjudicate his I-212 application for waiver of inadmissibility. But this argument fits squarely within the steps covered by the prohibition on judicial review found in 8 U.S.C. § 1252(g)." *Id.* at 800. Simply put, "courts are barred from reviewing discretionary decisions" about executing removal orders. *Id.*

The Seventh Circuit followed suit in *Wigglesworth v. INS*, 319 F.3d 951 (7th Cir. 2003). In that case, the government pressed forward with deportation even though the alien had filed an

application for suspension of deportation. On a petition for review, the foreign national requested an order compelling the reopening of the deportation proceedings so that the Immigration Judge could adjudicate her application. *Wigglesworth*, 319 F.3d at 955. But the Seventh Circuit held that § 1252(g) "applies with equal force to the Attorney General's refusals to act," including a refusal to "adjudicat[e] her application for discretionary relief." *Id.* at 961. The Attorney General's decision to proceed with deportation and "not to adjudicate Ms. Wigglesworth's application for discretionary relief is barred by § 1252(g) just as a decision to commence proceedings or to adjudicate the application for relief would be unreviewable." *Id.*

Other decisions reach the same result. Simply put, a district court lacks the power to hear a challenge to the Executive Branch's discretionary decision to execute a removal order. The fact that an administrative application is pending does not open the door to judicial review. *See, e.g., Velarde-Flores v. Whitaker*, 750 Fed. Appx. 606, 607 (9th Cir. 2019) ("Because this petition arises from the government's decision to execute valid orders of removal, it facially falls within the statutory jurisdictional bar. The decision whether to remove aliens subject to valid removal orders who have applied for U-visas is entirely within the Attorney General's discretion."); *Kitphothiyan v. Ashcroft*, 74 Fed. Appx. 623, 625 (7th Cir. 2003) (holding that the district court lacked jurisdiction under § 1252(g) to stay the deportation when there was a pending "visa application filed on his behalf"); *Bhatt v. Reno*, 204 F.3d 744, 745-48 (7th Cir. 1999) (holding that § 1252(g) barred a challenge to deportation based on a pending motion for reconsideration before the Board); *Fedorca v. Perryman*, 197 F.3d 236, 240 (7th Cir. 1999) ("Fedorca seeks as relief only a stay of deportation pending his appeal to the BIA – or in other words, review of the decision to execute his deportation, which is barred by § 1252(g)."); *Garcia v. Dep't of*

12

*Homeland Sec.*, 2019 WL 7290556, at *3 (N.D. Ill. 2019) (holding that § 1252(g) deprived the court of jurisdiction to stay removal based on a pending application for a U-visa).

Petitioner attempts to cabin the language of § 1252(g) to *discretionary* decisions by Homeland Security to execute an order of removal.[3] But even under that reading, the statute would foreclose her claim. The Executive Branch made the decision to deport E.F.L., knowing full well that there was a pending VAWA self-petition. That decision was an act of discretion.

Petitioner relies upon the APA, but it cannot support jurisdiction. Based on its plain text, the APA does not apply to the extent that "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). Both carve-outs apply here. The Immigration and Nationality Act expressly forecloses judicial review of a decision to execute an order of removal. 8 U.S.C. § 1252(g); *Kightlinger v. Napolitano*, 500 Fed. Appx. 511, 515 (7th Cir. 2013) ("District courts do not have jurisdiction over an APA challenge to federal-agency action when another federal statute specifically precludes review. . . . Here, 8 U.S.C. § 1252 specifically precludes district-court review of Kightlinger's order of removal."); *Garcia v. Dep't of Homeland Sec.*, 2019 WL 7290556, at *3 (N.D. Ill. 2019); *Albarran v. Wong*, 157 F. Supp. 3d 779, 786 (N.D. Ill. 2016). And the Executive Branch is exercising its discretion to remove E.F.L. notwithstanding the pending VAWA self-petition. *See AAADC*, 525 U.S. at 483 (describing the decision to execute removal orders as an exercise of discretion); *see also Lalani v. Perryman*, 105 F.3d 334, 337 (7th Cir. 1997) ("[T]he APA is not a useful tool for aliens

---

[3] Petitioner contends that § 1252(g) allows a challenge to the "legal authority" to execute a removal order. *See* Reply Brf. at 3 (Dckt. No. 19). That reading would tear a hole in the text. In effect, a district court could hear a challenge anytime an alien argues that removal would be unlawful. The exception would swallow the rule. The Seventh Circuit has repeatedly warned against opening the courthouse doors by "recharacterizing a claim." *Gomez-Chavez v. Perryman*, 308 F.3d at 800. This case does not fall within the narrow exception for "rare cases which present substantial constitutional issues or bizarre miscarriages of justice." *See Bhatt v. Reno*, 204 F.3d 744, 746-47 (7th Cir. 1999); *Nino v. Johnson*, 2016 WL 6995563, at *5 (N.D. Ill. 2016).

challenging immigration decisions."); *Ardestani v. INS*, 502 U.S. 129, 133 (1991) ("Congress intended the provisions of the Immigration and Nationality Act . . . to supplant the APA in immigration proceedings."); *Califano v. Sanders*, 430 U.S. 99, 107 (1977).

This Court fully appreciates the seriousness of E.F.L.'s allegations about decades of abuse, and the extraordinarily difficult situation that she and her family continue to face. But the Executive Branch, not the judiciary, possesses discretion about whether to press forward on a removal order. This Court must stay within the jurisdictional limits that Congress has placed around the federal courts. And here, the text of the statute blocks this Court from reviewing the decision to execute the removal order.

## Conclusion

This case is dismissed for lack of subject matter jurisdiction under 8 U.S.C. § 1252(g).

Date: February 6, 2020

Steven C. Seeger
United States District Judge